Bronson, J.
The right decision of this case depends upon a a few plain principles, most of which are beyond the reach of controversy. The plaintiff below is entitled to the property which he has recovered, unless his title has passed to the defendants by virtue of the sheriff’s sale under the judgment and execution in favor of Bancker. At the common law, lands were not subject to *16 sale on execution, and if the power to sell this land cannot he found in the statute, it does not exist, and the defendants below acquired no title. The judgment under which the sale was made was recovered for a debt secured by a mortgage on-the property sold, and there was not only the absence of any authority to sell, but a sale was positively forbidden. The statute declares that “ it shall not be lawful for the sheriff to sell the equity of redemption of the mortgagor, his heirs or assigns, in such estate, by virtue of any execution upon such judgment.” (2 JR. iS. 368, § 31.) The next section directs the plaintiff’s attorney to make an endorsement on the execution, with a direction to the sheriff not to levy upon the mortgaged premises. ' This was designed as a guide to the sheriff, and a protection to third persons who might become purchasers. It was not needed for the benefit of the mortgagor and judgment debtor, for his rights were effectually secured by the preceding section, which forbids a- sale without any condition or qualification whatsoever. The omission of the attorney to make the proper endorsement upon the execution may render him liable to a purchaser who has lost his money; but it cannot create a power to sell the land. The defendant in the execution is not in fault for the want of an endorsement on the process, for it was neither issued by him, nor by his agent.
It was said on the argument that the want of an endorsement was a mere irregularity, which did not render the process void, but .only voidable; and that the defendant in the execution should have applied to the court and had the matter corrected before the sale was made. It may be granted that the process was neither void nor voidable. It was valid process for the sale of either goods or lands, with the exception of the mortgaged lands. But as to these, the execution was no better than a piece of blank paper.
If this view of the question was not in itself conclusive, it might be added that Hitchcock was not in fault for omitting to move the court. There was no proof nor is there any reason to believe that he knew any thing about the execution or the sale, until he was put out of possession by the summary pro *17 ceedings instituted by the purchasers. How then could he move the court to correct the execution prior to the sale ?
But .it was said by the counsel for the plaintiffs in error that when a party is once brought into court, he is chargeable with notice of whatever is done there, although he did not in fact appear, and had no actual knowledge on the subject. This is in general true as to the proceedings in court down to and including the judgment; but the rule does not apply to the subsequent issuing of execution, nor to the sale under it, which were ac.ts done out of court. As to such acts there is no constructive notice, and Hitchcock cannot be charged with any fault for not moving to correct the execution, until it first appears that he knew what had been done. The mouth of a party will sometimes be closed after he has omitted to speak at the proper time, and has thus been the occasion of misleading a third person. But there is no such thing as an estoppel in pais for neglecting to speak or act, where the party did not know the facts which, if known, would have made it his duty to speak or act. An estoppel in pais is a moral question. It can only exist where the party is attempting to do that which casuists would decide to be a wrong: something which is against good conscience and honest dealing. (8 Wend. 483; 3 Hill, 215, 220.)
The argument which has just been noticed was repeated in another form. It was said that, by allowing the sale to be made, Hitchcock waived the irregularity in the execution, and so the defendants got a good title. But a party cannot waive an irregularity without first knowing that it exists. Anri besides, this is not a question of regularity, but of power. The sheriff had no authority to sell this land. .
I have spoken of an estoppel in pais, and of a waiver, as though, -under other circumstances, they might possibly affect the question. But I am not prepared to say that they can, under any circumstances, supply the want of a power, where the question is upon the title to real property. (See Swick v. Sears, 1 Hill, 17; Wood v. Colvin, 2 id. 566; Hewson v. Deygert, 8 John. 333.) The statute of frauds stands in the *18 way, and forbids that the title to land should pass by parol. Chancery may sometimes interfere; but I do not see the principle on which a court .of law can rely on the waiver or the estoppel. It is not, however, necessary to decide the point on the present occasion.
The plea or allegation that the defendants are bona fide purchasers belongs to a court of equity. And even there it could avail nothing, so long as the judgment debtor is not shown to be in fault. A man cannot acquire a title to my land merely because he acted in good faith, and supposed he should get it. He must show that I have conveyed, or that some one else has done it for me under a power either legal or conventional. If proof of such a position could be necessary, it will be found in all the cases where a purchaser has set up a title under a tax or judgment which had been paid before the sale. The power being gone, the title failed. The money and the good faith of the purchaser availed nothing. '
It has been strenuously urged that.the proof which was given by the plaintiff to show the identity of the judgment and mortgage debt was inadmissible, on the ground that it contradicted the judgment, execution and sheriff’s deed, or some of them. But I am unable to discover any such contradiction as should preclude the party from giving the evidence. There is certainly no direct conflict. None of the documents in the cause affirm that the mortgage and judgment securities were given for different debts. There is at the most nothing but an inference that the two securities stand as the evidences of two debts, and if we do not allow that inference to be overcome by extrinsic evidence, the statute will, in .effect, be repealed. It will never appear on the face of the judgment that it was recovered for a debt seemed by mortgage, and the party must of necessity go out of the papers to establish the fact. The case does not differ very materially from those where the party has been allowed to prove the judgment paid, for the purpose of defeating a sale under it. On the face of the judgment there appeared to be a subsisting debt, which was unsatisfied of record; and yet the party has been permitted to overthrow the apparent power to sell by going into *19 extrinsic evidence. I admit that a distinction may be made between the two cases; but still I think the evidence was properly admitted in this case for the purpose of giving effect to the statute, which forbids a sale of the equity of redemption where the judgment and mortgage debt is identical. I will not refer to the cases where, against all principle, the party has been allowed to contradict an absolute deed by showing by parol, and in a court of law, that it was intended for a mortgage; for although that doctrine seems now to be firmly settled in this state, I hope never to see it extended to cases which do "not come precisely within the rule.(a)
Cowen, J.
The statute provides that when a judgment shall he recovered for a debt secured by mortgage of real estate, or for any part of such debt, it shall not be lawful for the sheriff to sell the equity of redemption of the mortgagor &c- in such estate by virtue of any execution upon such judgment. Independently of this statute, the mortgagee had the right by a general statute of long standing to sell real as well as personal estate upon such a judgment, including the equity of redemption. The statute now relied on is of recent origin, and like several others does no more than exempt certain property of the debtor from execution for that debtor’s personal benefit. He may therefore renounce the benefit of it as to himself and all persons claiming under him. I admit he may do this by any act necessarily implying a renunciation, as well as by express stipulation. Either would let in the right to sell the equity of redemption pursuant to the general statute authorizing a sale of real estate by virtue of an execution. I do not think, however, that the mere act of confessing a judgment for the mortgage money operates as a renunciation of the exemption. It is equal whether the act may not *20 have been for the purpose of affording a concurrent remedy against the mortgagor’s personal property alone.
The question is not one of irregularity, but of power; and whether the property be exempt or not must depend on extrinsic evidence.
There is nothing in the fact that the money is made due by the bond and judgment immediately, to estop the debtor from showing by extrinsic evidence its identity with the moneys seemed by the mortgage, though this was payable at a future day. Such proof is not necessarily a contradiction of the record, but merely goes to explain an ambiguity.
Judgment affirmed.

 Since this opinion was delivered the cases referred to have been overruled by tire court for the correction of errors, and the doctrine established that parol evidence is not admissible in a court of law to show a deed absolute on its face to have been intended as a mortgage. (Webb v. Rice and another,on error, December 1843, reversing the decision of the supreme court in 1 Hill, 606.)